UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

PEERLESS INSURANCE COMPANY, as )
Subrogee of JAMESTOWN'S RENTAL )
PROPERTIES LLC, )
)
    Plaintiff, )
)
    v. )           Case No. 1:19-cv-1699
)
BROAN-NUTONE, LLC, NUTONE, INC., )
A.O. SMITH CORPORATION, and )
REGAL BELOIT CORPORATION, )
)
    Defendants. )

**ORDER ON MOTION TO DISMISS FOR LACK OF JURISDICTION**
**(Doc. 8)**

In this product liability case removed from Chautauqua County Supreme Court, Plaintiff

Peerless Insurance Company—as subrogee of its insured Jamestown's Rental Properties LLC—

sues the above-captioned defendants on theories of strict liability, negligence, and breach of

warranty arising out of a fire at a commercial property.  Defendants A.O. Smith Corporation and

Regal Beloit Corporation (collectively, the "Component Manufacturer Defendants") have filed a

motion to dismiss for lack of personal jurisdiction.  (Doc. 8.)  Plaintiff opposes the motion

(Doc. 11) and the Component Manufacturer Defendants have filed a reply (Doc. 16).  The court

held a telephone status conference on May 18, 2020.  (Doc. 25.)

<u>**Background**</u>

The parties have stipulated to the following facts that are material to the pending motion.

(*See* Docs. 26, 27.)  On December 19, 2016, a Mayville, New York commercial building insured

by Plaintiff Peerless Insurance Co. was damaged in a fire, with direct fire damage confined

largely to the restroom.  The restroom was ventilated by a fan manufactured by defendants

Broan-Nutone, LLC, Nutone, Inc. (collectively, "Broan"), or a Broan predecessor in interest. Plaintiff alleges that the fire originated in the exhaust fan, which Plaintiff asserts was not altered or modified prior to or during its use. Plaintiff attributes fault to Broan as the manufacturer of the fan. Plaintiff also sues defendant A.O. Smith Corporation and its alleged successor, defendant Regal Beloit Corporation, as the manufacturers of the component fan motor. The court will refer to A.O. Smith Corporation and Regal Beloit Corporation as the "Component Manufacturer Defendants."

Defendants deny that the exhaust fan and the fan motor were defective or the cause of the fire.

Broan is one of the principal manufacturers of residential and commercial ventilation products in the United States. These products include exhaust fans of the type at issue in this case. Broan's products are sold in every state, including New York State.

A.O. Smith is best known for the manufacture of hot water heaters, boilers, and other plumbing equipment. Prior to 2011, it manufactured fan motors for resale to manufacturers like Broan, which incorporated these into their finished products.

The Component Manufacturer Defendants played no part in the marketing and distribution of Broan products. Based on Broan's reputation as a national-level manufacturer of exhaust fans and similar products, the Component Manufacturer Defendants knew that the fan motors it supplied would be used to make fans sold in all states, including New York State.

In addition to the facts stipulated above, the court notes as follows. In support of their motion to dismiss, the Component Manufacturer Defendants have supplied affidavits from representatives of both companies. Wendy Grant from A.O. Smith states that the company is incorporated in Delaware, has its principal place of business in Wisconsin, and does not have any

manufacturing facilities or administrative offices in New York. (Doc. 8-3 at 3.) Ms. Grant further states that A.O. Smith did not design, develop, or manufacture any of the electric motor component parts sold to Broan-NuTone in the State of New York. A.O. Smith also has no record of any shipments of motors being made to Broan-NuTone within the State of New York. (*Id.*)

Scott Scarpelli of Regal Beloit Corporation states that the company is incorporated and has its principal place of business in Wisconsin. (Doc. 8-4 at 2–3.) Mr. Scarpelli further states that the company has no manufacturing facilities, administrative offices, or employees in New York. (*Id.* at 3.) According to Mr. Scarpelli: "At any time material to this case, Regal has never designed, manufactured, or sold any products in the State of New York, nor has it ever sold any product to Broan-Nutone, LLC that could have been incorporated into any product of Broan-Nutone, Inc. that may have been distributed into or used in the State of New York." (*Id.*)

In opposition to the motion to dismiss, Plaintiff relies on the following. Paragraph 18 of the Complaint states: "At all times material hereto, products designed, manufactured, distributed and sold by the defendants were placed in the stream of commerce and sold in the State of New York and Chautauqua County New York in significant numbers." (Doc. 1-1 ¶ 18.) In addition, Plaintiff refers to statements on the Component Manufacturers' websites. (*See* Doc. 11-4 (statement that A.O. Smith obtained exclusive supply status for water treatment products at Lowe's home improvement stores nationwide); Doc. 11-6 (statement that A.O. Smith is a leading manufacturer of water heaters and boilers, with $3.2 billion in sales in 2018, approximately 16,300 employees in the United States and other countries, and with products sold to and utilized nationwide and worldwide); Doc. 11-7 ("Regal" website listing distributors in New York carrying products under Regal's brands); Doc. 11-8 ("Regal" "eCommerce" webpage).)

There is no allegation by any party that the Broan exhaust fan was manufactured in New York State or that the Component Parts Manufacturers shipped the fan motor into New York State. The record before the court indicates that the Broan exhaust fan was manufactured in a state other than New York.

## Analysis

### I.   Rule 12(b)(2) Standard

The court may determine a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction on the basis of pleadings and affidavits alone, or it may permit discovery or conduct an evidentiary hearing. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam).[1] Where a court determines the motion on the basis of pleadings and affidavits, the plaintiff's burden is to "'make a prima facie showing that jurisdiction exists.'" *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). The pleadings and affidavits must be construed in the light most favorable to the plaintiff, with all doubts resolved in the plaintiff's favor. *Id.* at 85. However, the court need not draw "argumentative inferences" in the plaintiff's favor, nor should the court "'accept as true a legal conclusion couched as a factual allegation.'" *In re Terrorist Attacks*, 714 F.3d at 673 (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).

"The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50,

---

[1] As the reference to affidavits, discovery, and an evidentiary hearing suggests, "[a] court may take into account factual materials outside the pleadings when considering a motion to dismiss based upon an asserted lack of personal jurisdiction . . . ." *Haidon v. Budlong & Budlong, LLC*, 318 F. Supp. 3d 568, 572 n.1 (W.D.N.Y. 2018).

59 (2d Cir. 2012). "First, the plaintiff's service of process upon the defendant must have been procedurally proper." *Id.* "Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective." *Id.* "Third, the exercise of personal jurisdiction must comport with constitutional due process principles." *Id.* at 60.

The Component Manufacturer Defendants do not argue that service of process upon them was improper. The court accordingly begins with the statutory requirements for personal jurisdiction. *See Licci*, 673 F.3d at 61 ("Where, as here, the plaintiffs premise their theory of personal jurisdiction upon the New York long-arm statute, we first consider whether the requirements of the statute have been satisfied before proceeding to address whether the exercise of jurisdiction would comport with the Due Process Clause."). The parties agree that the only basis asserted for the exercise of personal jurisdiction over defendants A.O. Smith and Regal Beloit is specific jurisdiction through the New York long-arm statute, N.Y. C.P.L.R. § 302(a). Plaintiff makes no claim of general jurisdiction under N.Y. C.P.L.R. § 301.[2]

## II.    Statutory Requirements for Personal Jurisdiction—CPLR § 302(a)(3)

Plaintiff relies on C.P.L.R. § 302(a)(3), a section of New York's long-arm statute that provides, in pertinent part:

> (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: . . .
>
> 3. commits a tortious act without the state causing injury to person or property within the state, . . . if he

---

[2] The parties and the court refer to New York law because "[t]he breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006); *see also Wilderness USA, Inc. v. DeAngelo Brothers LLC*, 265 F. Supp. 3d 301, 305 (W.D.N.Y. 2017) ("In general, a district court's personal jurisdiction is determined by the law of the state in which the court is located." (internal quotation marks omitted)).

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

N.Y. C.P.L.R. § 302(a)(3).  For either subsection of § 302(a)(3) to apply, "(1) a defendant must have committed a tortious act outside New York, (2) the cause of action must arise from that tortious act, and (3) the act must have caused injury to a person or property within New York." *Albino v. Glob. Equip. USA, Ltd.*, No. 6:14-cv-06519(MAT), 2018 WL 3537060, at *7 (W.D.N.Y. July 23, 2018) (quoting *Doe v. Delaware State Police*, 939 F. Supp. 2d 313, 325–26 (S.D.N.Y. 2013)).  The Component Manufacturer Defendants do not challenge the sufficiency of the Complaint's allegations as to those three elements.  The court accordingly turns to the specific requirements of the subsections of § 302(a)(3), beginning with subsection (a)(3)(ii).

Section 302(a)(3)(ii) requires consideration of two conjunctive prongs: the reasonable foreseeability of consequences in New York, and the derivation of substantial revenue from interstate or international commerce.  The Component Manufacturer Defendants do not challenge the sufficiency of Plaintiff's allegations as to the latter prong.  The court accordingly focuses on the former ("foreseeability") prong.  The court has in mind that the foreseeability prong is an objective test.  *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999).

Plaintiff asserts that it has adduced sufficient facts on the foreseeability prong.  (Doc. 11-11 at 7.)  Plaintiff relies on paragraph 18 of the Complaint.  (Doc. 1-1 ¶ 18 ("At all times material hereto, products designed, manufactured, distributed and sold by the defendants were placed in the stream of commerce and sold in the State of New York and Chautauqua County New York in significant numbers.").)  Plaintiff also refers to the statements on the Component Manufacturers' websites described above.

6

Plaintiff argues that *McDonough v. Cycling Sports Group, Inc.*, 392 F. Supp. 3d 320 (W.D.N.Y. 2019), is instructive.  The plaintiff in that case was injured when the "cycling fork" on his Cannondale bicycle failed.  He sued Cannondale, Cannondale's parent company ("CSG"), and the Taiwanese manufacturer of the cycling fork, Advanced International Multitech Co. Ltd. ("AIM").  Before factual discovery began, AIM sought summary judgment for lack of personal jurisdiction.  AIM submitted evidence that it was aware that the third party to which it sold the cycling fork was distributing that component in the U.S., but that AIM had no assets or advertising in New York and did not generate any revenue from any sale of its products to retail customers in New York.  Plaintiffs submitted evidence that AIM directly shipped components to CSG and that AIM's website described it as a "worldwide corporation."  There was also evidence that CSG employees worked directly with AIM employees in designing and testing cycling forks for CSG bicycles.  *Id.* at 323–24.

Ruling on the summary judgment motion, the *McDonough* court concluded that the plaintiffs had made a sufficient showing to proceed with jurisdictional discovery.  *Id.* at 327.  Analyzing the requirements of § 302(a)(3)(ii), the court reasoned that the evidence in the light most favorable to the plaintiffs indicated that AIM "worked closely with CSG to design and manufacture cycling forks, knowing that those cycling forks would be incorporated into bicycles that would be sold by CSG within the state of New York."  *Id.* at 328.  The court further reasoned that "the evidence submitted by Plaintiffs and CSG demonstrates that AIM's products are sold worldwide, rendering it likely that AIM in fact has substantial revenues from international commerce."  *Id.*  The court also found it significant that, "in moving for summary judgment prior to any discovery having been taken, AIM has not presented any evidence

regarding its revenues from which the Court could conclude that it does not derive substantial revenue from interstate or international commerce." *Id.*

The Component Manufacturer Defendants assert that *McDonough* is distinguishable because "it has not been established here that the actual product here was sold by Broan-NuTone to Plaintiff's subrogor in New York." (Doc 16 at 2.) According to the Component Manufacturer Defendants, "[i]t is very plausible that the subject product may have been sold to the end consumer in another jurisdiction, such as Pennsylvania." (*Id.* at 2–3.) But the Component Manufacturer Defendants cite no authority holding that such traceability is required.

To the contrary, the foreseeability requirement "relates to forum consequences generally and not to the specific event which produced injury within the state." *Candelario v. Bobst N. Am., Inc.*, No. 18-CV-6281 CJS, 2019 WL 4112179, at *5 (W.D.N.Y. Aug. 29, 2019) (quoting *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 n.4 (N.Y. 1980)). Thus in *Candelario*, even though the foreign manufacturer of the machine at issue sold it to a company in Ohio before the plaintiff's New York employer purchased it as used equipment, the court concluded that the manufacturer could have foreseen the potential for consequences in New York. *Id.* That was because the manufacturer sold four of its machines (deriving revenue of more than $8 million) knowing that they would enter the New York market. *See id.* The court concluded that "[b]y selling machines to the New Jersey corporation chargeable with the knowledge that one or more of them would end up in New York, Bobst Lyon, SAS, could have foreseen the potential for consequences in New York." *Id.* The fact that the particular machine involved in the plaintiff's workplace injury took a more circuitous route to New York did not alter that conclusion.

8

Likewise in this case, even if the particular fan or motor involved in the December 19, 2016 fire was not sold in New York, the allegations and evidence considered in the light most favorable to Plaintiff are that the Component Manufacturer Defendants sold numerous other component fan motors with knowledge that they would be used to make fans sold in all states, including New York.[3] As *Candelario* suggests, then, the distinction upon which the Component Manufacturer Defendants rely is no basis for distinguishing *McDonough*.

The court concludes that Plaintiff has made a sufficient showing at this stage that Component Manufacturer Defendants could have foreseen the potential consequences in New York. Similar to AIM in *McDonough*, the Component Manufacturer Defendants knew that their component fan motors would be incorporated into a great quantity of products that would be sold within New York. Thus, as in *Candelario*, "it appears that personal jurisdiction is available under (a)(3)(ii)." *Candelario*, 2019 WL 4112179, at *5; *see also McDonough*, 392 F. Supp. 3d at 328 ("Under these circumstances, the Court cannot find as a matter of law that the requirements of CPLR 302(a)(3)(ii) are not met.").[4]

But that does not end the analysis. "[T]he simple likelihood or foreseeability 'that a defendant's product will find its way into New York does not satisfy this element[;] . . .

---

[3] The court recognizes Mr. Scarpelli's declaration that the Regal Beloit Corporation "[n]ever sold any product to Broan-Nutone, LLC that could have been incorporated into any product of Broan-Nutone, Inc. that may have been distributed into or used in the State of New York." (Doc. 8-4 ¶ 8.) But even assuming that is true, Plaintiff's theory is that the Regal Beloit Corporation is responsible for the motor at issue as the legal successor in interest of A.O. Smith. (*See* Doc. 1-1 ¶ 17.) The court is not ruling on any issue of successor liability here, but assumes for present purposes that the personal jurisdiction analysis is the same for both of the Component Manufacturer Defendants. Indeed, the parties have agreed that "with regard to the personal jurisdiction question pending before the Court on this motion, the decision will apply to both of The Component Manufacturer Defendants." (Doc. 27 at 2.)

[4] It is therefore unnecessary to reach Plaintiff's argument for jurisdiction under § 302(a)(3)(i).

purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court is required.'" *Kernan*, 175 F.3d at 241 (quoting *In re DES Cases*, 789 F. Supp. 552, 570–71 (E.D.N.Y. 1992)); *see also Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 107 (S.D.N.Y. 2015) ("New York courts require some discernable effort by the defendant to directly or indirectly serve the New York market." (quoting *Parker Waichman Alonso LLP v. Orlando Firm, P.C.*, No. 09 Civ. 7401(CM), 2010 WL 1956871, at *10 (S.D.N.Y. May 14, 2010))); *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 363–64 (S.D.N.Y. 2009) ("Stated differently, the foreseeability requirement is not satisfied unless there are tangible manifestations showing that the nondomiciliary defendant . . . either should have known where [its product was] destined or was attempting to reach a New York market." (alterations in original; internal quotation marks omitted)).[5]  The court accordingly considers this requirement below.

## III.    Constitutional Due Process

"To comport with due process, a forum state may exercise jurisdiction over an out-of-state corporate defendant only if the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 149 (2d Cir. 2019) (alteration in original; internal quotation marks omitted); *see also McDonough*,

---

[5] The law is arguably unsettled as to whether "purposeful availment" is part of the § 302(a)(3) analysis or if it is solely a part of the constitutional due process determination. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 n.3 (2d Cir. 2002); *see also Zanotti v. Invention Submission Corp.*, No. 18-cv-5893 (NSR), 2020 WL 2857304, at *15 n.8 (S.D.N.Y. June 2, 2020).  The court need not resolve that question because "purposeful availment" is necessary under the constitutional analysis, which the court considers below.

392 F. Supp. 3d at 328 (same).  "The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant."  *U.S. Bank Nat'l Ass'n*, 916 F.3d at 150.

> First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State.  Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct.  Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*Id.* (internal quotation marks and citations omitted).  The first two conditions correspond to the "minimum contacts" prong of the due process analysis, and the third condition corresponds to the "fair play and substantial justice" prong.  *See Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1348 (Fed. Cir. 2016).

It appears from Plaintiff's filings (*e.g.*, Doc. 1-1 at 13, ¶ 18; Doc. 11-11 at 2) and from Plaintiff's reliance on *McDonough* that Plaintiff is relying on a "stream of commerce" theory for personal jurisdiction.  "[M]inimum contacts sufficient to support the existence of specific jurisdiction 'can be established through a stream of commerce theory.'"  *McDonough*, 392 F. Supp. 3d at 328 (quoting *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 543 (S.D.N.Y. 2018)).  But "the precise requirements of that theory are unsettled."  *RegenLab*, 335 F. Supp. 3d at 544 (internal quotation marks omitted).  "In *Asahi Metal Industry Co. v. Superior Court of California* [480 U.S. 102 (1987)], 'the Supreme Court was evenly divided over whether the mere awareness of a nonresident defendant that its products would foreseeably reach the forum state in the stream of commerce constitutes minimum contacts with the forum.'"  *Id.* (quoting *Polar Electro*, 829 F.3d at 1348).

Although *J. McIntyre Machinery, Ltd. v. Nicastro* provided an "opportunity to provide greater clarity," 564 U.S. 873, 879 (2011) (Kennedy, J., plurality opinion), there was no majority opinion in that case.  The controlling law is therefore the narrowest opinion from that case—Justice Breyer's concurrence—"which made no substantive changes to the Supreme Court's

11

precedent." *McDonough*, 392 F. Supp. 3d at 328.  Notably, Justice Breyer's concurrence "did

not foreclose the possibility that a court might exercise jurisdiction where there is a 'regular

course of sales' of defendant's goods in the forum state, or 'something more, such as special

state-related design, advertising, advice, marketing or anything else.'" *UTC Fire & Sec.*

*Americas Corp. v. NCS Power, Inc.*, 844 F. Supp. 2d 366, 376 (S.D.N.Y. 2012) (quoting

*Nicastro*, 564 U.S. at 889 (Breyer, J., concurring)).

Plaintiff asserts that the Component Manufacturer Defendants "intentionally reached out

to New York by marketing and selling their products to New York customers, via partnerships

with retailers in New York and via operation of interactive websites permitting New York

customers to order products directly or via New York distributors." (Doc. 11-11 at 9.)  The

Component Manufacturer Defendants maintain that the activities to which Plaintiff refers relate

to A.O. Smith's water products division (which they say is unrelated to the alleged electric motor

component at issue).  They also assert that the websites to which Plaintiff refers (Docs. 11-7, 11-

8) are "unconnected to the Regal entity sued herein." (Doc. 16 at 3.)

Regarding "partnerships" with New York retailers, the court has considered the evidence

that A.O. Smith obtained exclusive supply status for water treatment products at Lowe's home

improvement stores nationwide (including Lowe's stores in New York).  (*See* Docs. 11-4, 11-5.)

But apart from the fact that A.O. Smith makes water treatment products and also made fan

motors at the relevant times, there is no evidence that the product lines are related.  It is too far a

stretch to hold that Plaintiff's claim concerning an allegedly defective fan motor arises out of or

relates to A.O. Smith's success in landing the Lowe's account for water treatment products.

*See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 930 n.6 (2011) ("[E]ven

regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.").

The court has also considered the evidence from the "Regal" website indicating that a variety of distributors in New York carry "Regal" products (Doc. 11-7) and also indicating that Regal has an "eCommerce" offering (Doc. 11-8). The Component Manufacturer Defendants assert that the website reflected in Documents 11-7 and 11-8 is "unconnected to the Regal entity sued herein"—i.e., Regal Beloit Corporation. (Doc. 16 at 3.) Although the website appears to be branded simply with the word "Regal" in a purple parallelogram, the website URL is "regalbeloit.com." (Doc. 11-8 at 2.) The same website includes a copyright notice with reference to "Regal Beloit Corporation." For present purposes, the court rejects the Component Manufacturer Defendants' suggestion that the website is unconnected to Regal Beloit Corporation. But as discussed below, the statements on the websites are insufficient to support minimum contacts.

The Regal website identifies New York "distributors" that carry Regal brands, which the court presumes includes brands that cover the type of component motor at issue in this case. *See* https://www.regalbeloit.com/brands/Fasco/About (last visited July 20, 2020) ("Regal has delivered the world's most complete line of custom fractional horsepower motors, draft inducers and blowers for over 100 years under the Fasco® Brand."). But assuming that the Fasco brand or other Regal brands include the electric motor business acquired from A.O. Smith, Regal's contracts with New York distributors is still insufficient. Indeed: "To meet the minimum contacts requirement, 'the defendant's suit-related conduct must create a substantial connection with the forum State'—that is, the 'defendant *[it]self*' must create those contacts, and those contacts must be with the 'forum State itself,' not simply with persons who reside there."

*U.S. Bank Nat'l Ass'n*, 916 F.3d at 150 (alteration in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014)). "Thus, although a defendant's contacts with the forum state may be 'intertwined with [its] transactions or interactions with the plaintiff or other parties . . . [,] a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction.'" *Id.* (alterations in original) (quoting *Walden*, 571 U.S. at 286, and citing *Bristol-Myers Squibb Co. v. Superior Court of Calif., San Francisco Cty.*, 137 S. Ct. 1773, 1783 (2017)).

Plaintiff's reliance on the "eCommerce" portion of Regal Beloit Corporation's website is also insufficient for personal jurisdiction. The Second Circuit has stated that the "spectrum" of a website's interactivity as discussed in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), "may . . . be helpful in analyzing whether jurisdiction is permissible under due process principles." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 n.13 (2d Cir. 2007). The court has reviewed the eCommerce page as it appears online. *See* https://www.regalbeloit.com/tools-resources/ecommerce (last visited July 20, 2020).

The Regal website appears to fall in the "middle ground" of the *Zippo* spectrum. *See Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S. Org., LLC*, 875 F. Supp. 2d 211, 221 (W.D.N.Y. 2012) ("This middle ground covers a wide range of websites, including those where a user can purchase products online, establish an online account, communicate with the owner of the site or its representatives, or download order forms or other documents."). The website includes both "passive" components that simply make information available, plus the "eCommerce" page. The main eCommerce page contains links to a number of other pages (apparently tailored by region or brand) where users with accounts can enter orders.

Considering the "level of interactivity and the commercial nature of the exchange of information" on the Regal eCommerce page, *Zippo*, 952 F. Supp. at 1124, the court concludes

that the webpage is an insufficient basis for personal jurisdiction. It is difficult to evaluate the precise level of interactivity of the eCommerce page without creating an account. But the eCommerce page appears to constitute only a portion of a much broader, largely passive, website. Moreover, the nature of Regal's business weighs against concluding that the eCommerce page targets every state or New York. At least with respect to the products at issue here, Regal is a component manufacturer—it operates in the "business-to-business" space, not the "business-to-consumer" space. *Cf. Mrs. U.S. Nat'l Pageant*, 875 F. Supp. 2d at 223 (nature of beauty pageant's business was to obtain applications from every state to select a national winner; distinguishing situation where defendants "simply solicit[] business nationwide, in a general sense"); *Qwest Commc'ns Int'l, Inc. v. Sonny Corp.*, No. C06-20P, 2006 WL 1319451, at *2 (W.D. Wash. May 15, 2006) (company that used its website to advertise, sell, and ship its product to customers' Washington homes purposefully availed itself of Washington; distinguishing situation, as in *Asahi*, where a company sells component parts to others that may assemble or distribute them through their own unilateral activity).

The only other facts that Plaintiff has advanced regarding the Component Manufacturer Defendants' contacts with New York relate to A.O. Smith's current or prior registrations with the New York Department of State's Division of Corporations. It appears that A.O. Smith was registered as a New York domestic business corporation between 1916 and 1986. *See* New York Dep't of State, Div. of Corporations, State Records, & UCC, https://www.dos.ny.gov/corps/bus_entity_search.html (search all status types for "A.O. Smith") (last visited July 20, 2020). But Plaintiff merely notes that fact as "[i]nteresting[]" (Doc. 11-11 at 2), and the Component Manufacturer Defendants correctly observe that the prior business registration is not relevant to the events at any time in this case. A.O. Smith is currently

registered as an active foreign business corporation in New York. (*See* Doc. 11-2.)  But that is an insufficient basis for asserting specific personal jurisdiction. *See Wilderness USA, Inc. v. DeAngelo Brothers LLC*, 265 F. Supp. 3d 301, 305 n.3 (W.D.N.Y. 2017) (no specific jurisdiction over defendant that was registered to do business as a foreign corporation in New York State).

Since the above alleged contacts with New York are insufficient, the only remaining contact to consider is the presence in New York of the allegedly defective fan motor in this case and presumably many other fan motors from the Component Manufacturer Defendants.  The potential volume of sales makes the question in this case somewhat closer. *See Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen*, No. 12 Civ. 6390(JPO), 2013 WL 1775440, at *7 (S.D.N.Y. Apr. 25, 2013) (potential volume of sales of the defendant's electronics products made for a "close question" because New York is a major market for electronics goods).  Nevertheless, the allegations and evidence in this case fail to establish a "regular course" of sales in New York or anything "more" to indicate targeting the New York forum.

## IV.   Whether to Grant Jurisdictional Discovery

Plaintiff requests jurisdictional discovery, arguing that such discovery would likely reveal that:

> A.O. Smith and Regal contracted to supply fan motors to Broan-Nutone affirmatively knowing that Broan-Nutone's fans were sold and utilized pervasively throughout the State of New York; A.O. Smith and Regal's motors end up in thousands (or more) of buildings in New York every year; and Defendants each obtain substantial revenue from the sale and distribution of their products in New York.

(Doc. 11-11 at 9.)  The Component Manufacturer Defendants maintain that there is no need for jurisdictional discovery.

"[J]urisdictional discovery is permitted where a plaintiff has 'made a sufficient start toward establishing personal jurisdiction,' such that it appears there may be a colorable

jurisdictional claim." *McDonough*, 392 F. Supp. 3d at 329 (quoting *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 70 (E.D.N.Y. 2006)).  Failure to make out a prima facie case does not necessarily bar jurisdictional discovery.  *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 550 n.6 (2d Cir. 2007).  But the court should deny jurisdictional discovery where the plaintiff offers "only speculations or hopes . . . that further connections to [the forum] will come to light in discovery." *Eternal Asia*, 2013 WL 1775440, at *10 (alterations in original) (quoting *Rosenberg v. PK Graphics*, No. 03 Civ. 6655(NRB), 2004 WL 1057621, at *1 (S.D.N.Y. May 10, 2004)).  For the reasons discussed above, none of the evidence that Plaintiff has presented suggests that there may be a colorable jurisdictional claim.  Plaintiff's assertions about what jurisdictional discovery might reveal add nothing to the analysis above.

### Conclusion

A.O. Smith Corporation and Regal Beloit Corporation's Motion to Dismiss (Doc. 8) is GRANTED.

Dated this 21ˢᵗ day of July, 2020.

_____
Geoffrey W. Crawford, Judge
United States District Court